IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOE A. SIMMONS                                                      PLAINTIFF

v.                          Civil No.: 08-cv-5188

NURSE SUSAN and
DR. HOWARD                                                         DEFENDANTS

MEMORANDUM OPINION

Joe A. Simmons ("Simmons" or "Plaintiff" herein), currently an inmate in the Wrightsville Unit of the Arkansas Department of Correction in Wrightsville, Arkansas, filed this civil rights action under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636, this case is before the undersigned upon consent of the parties.  (Doc. 35).

A bench trial was held before the undersigned on November 8, 2010.  The undersigned issues the following Memorandum Opinion based upon the evidence presented at that trial.

I.   **Background and Evidence Presented**

Plaintiff presents a claim for denial of medical care in this action, naming as defendants Washington County Detention Center ("WCDC") nurse, Susan Johnson, and WCDC doctor, Bill Howard.

At the bench trial, testimony was presented from the following witnesses: (1) Joe A. Simmons, Plaintiff; (2) Nurse Johnson; (3) Corporal Schultz; (4) Dr. Howard; (5) Nurse Rhonda Bradley; and (6) Major Randall Denzer.

In addition to the testimony of witnesses, the following exhibits were also admitted:  Plaintiff admitted exhibits numbered

one through five into evidence; Defendants admitted exhibits numbered one through seventeen into evidence. The Court marked one exhibit.

Below is a summary of the testimony presented at the trial.

**<u>Plaintiff's Version of Events</u>**

Plaintiff was incarcerated in the WCDC on May 1, 2008. On June 25, 2008[1], Plaintiff was taking a shower, but the shower drains were stopped up, causing water to pool up to his ankles. Plaintiff fell in the shower due to the excess water and relied upon another inmate to help him to his feet. Plaintiff attempted to notify an officer by alerting the officer that he was in pain, and the officer told him to fill out a form for medical treatment.

Plaintiff filled out a medical request form on June 26, 2008, Pltf's. Ex. 4, stating he had hurt his back on the previous day during a fall and that his back pain from the fall was increasing. After Plaintiff had filled out the form, Corporal Robert Schultz[2] pulled Plaintiff into the hall and asked Plaintiff what had happened. Plaintiff told Schultz about his fall in the shower, and that he was in a great deal of pain.

Plaintiff did not see the nurse or doctor, but he was given

---

[1] Plaintiff's Statement of Claim, Pltf's. Ex. 1, as well as other materials previously provided to the Court state that Plaintiff fell on June 21, 2008. However, Plaintiff testified at trial that he was mistaken in those prior filings, and the correct date is June 25, 2008.

[2] At times throughout the pleadings, Corporal Robert Schultz has been incorrectly referred to as "Corporal Schitz."

Ibuprofen the following day.  The grievance (id.), was responded to by Nurse Johnson, who stated there was no report of a fall, and the sergeants should review the tape.   The nurse nevertheless prescribed Plaintiff Ibuprofen for fourteen days. (Id.) Plaintiff states he took Ibuprofen twice out of the four times it was offered to him on June 27, 2008.  However, on June 28, 2008, Plaintiff did not take it at all. Defs'. Ex. 8. On June 29, 2008, he took it once in the evening, and on June 30, 2009, he refused it at every pill call.  (Id.)

Continuing into July, Plaintiff took his medication one time on July 1, 2008; three times on July 2, 2008; twice on July 3, 2008; and once on July 4, 2008.  (Id.); Pltf's. Ex.  5.[3] Plaintiff did take the medication once each on July 5, 6, 7 and 8, 2008, but he but refused it at every pill call on July 9 and 10, 2008.  Defs'. Ex.  8; Pltf's. Ex.  5.

On July 11, 2008, Plaintiff sent in a second medical request, stating the Ibuprofen was not working to relieve his pain.  Defs'. Ex. 3; Pltf's. Ex.  4.  Again, Plaintiff was not evaluated by the

---

[3] Plaintiff testified that Defendants' Exhibit 8 was not entirely accurate as to when he took and when he refused medication, and he presented his Exhibit 5, which contained his annotations of when he received medication not otherwise reflected on Defendants' chart. However, Plaintiff agreed the medication log was generally accurate, and the times he did take his medication, but it was not properly noted, were few. Generally, Plaintiff's annotations reflected the times it was already noted on the chart where he did take the medication.  Only two times did he circle what appeared to be a "refusal" of medication, to indicate he did indeed take the medicine, rather than refuse it. Those dates are on July 2, 2008, and July 6, 2008, at bedtime pill call.  The dates stated in the section above reflect those indicated by the Plaintiff as times he took his medication, either by his testimony at trial or annotations as reflected in Plaintiff's Exhibit 5.

medical staff, but he was switched from Ibuprofen to Aleve.[4]  On July 11, 2008, Nurse Johnson responded to his grievance, noting the change and also stating he should see the doctor in a week if the pain had not improved.  (Id.)

As his pain had not resolved, Plaintiff had his girlfriend call the jail on July 17, 2008.  On that same date, Nurse Johnson spoke to Plaintiff and told him not to have relatives call the jail.  Plaintiff then told Nurse Johnson of his back pain, and he was placed on the list to see Doctor Howard.

Plaintiff was seen by Doctor Howard on July 22, 2008.  Although Plaintiff explained to Doctor Howard that the medication previously prescribed by the nurse – Aleve and Ibuprofen – was not working, Doctor Howard did not examine Plaintiff in any manner, and placed Plaintiff on a higher dose of medication.  Plaintiff filed a medical request on the next day, July 23, 2008, stating the higher dosage was not working, and that he was in "a lot of pain." Defs'.  Ex.  4; Pltf's.  Ex.  4.  The medication administration record shows Plaintiff took the medication twice on July 22, 2008, and not at all on July 23, 2008.  Defs'.  Ex.  8.  The response from Nurse Johnson came on July 24, 2008, stating it would "take time" and that Plaintiff should continue on his medications. Defs'.  Ex.  4; Pltf's.  Ex.  4.  While the medication administration record, Defs'.  Ex.  8, reflects that Plaintiff

_____

[4] Defendants presented no medication administration record for the dates of the Aleve prescription.

-4-

refused medication from July 22, 2008, until August 8, 2008, Plaintiff stated he did not take the medication each time it was offered, but he did continue to take it from time to time during this period.

Plaintiff also requested on July 24, 2008, to receive a copy of all of his medical complaints from June 21, 2008, to the present date. Pltf's. Ex. 4. Plaintiff stated he did not get all the copies returned, but could not remember on what date he submitted requests but did not get copies back. Plaintiff then began requesting two grievance forms at a time. He would place his copy in his personal property to document the request or grievance, in the event it was not returned to him. Plaintiff approximated that seven grievances were not returned to him. Plaintiff could not remember which officer he gave the unanswered grievances to, although at least one of the seven was given to Officer Pinata, who is not a party to this case.

Plaintiff sent a medical request on September 1, 2008, and the response on September 3, 2008, from Nurse Johnson, was that he had no expressions of pain or difficulty walking or moving about. Defs'. Ex. 5; Pltf's. Ex. 4. Plaintiff was prescribed Ibuprofen for fourteen days. (Id.)

Plaintiff testified he also sent medical requests on August 5, September 10, September 25, October 6, October 29, November 9, 2008, all of which went unanswered. Pltf's. Ex. 4. Plaintiff filed a document marked both as a "grievance" and "medical" on

-5-

November 11, 2008, stating he still had pain, and was being denied medical care.  (Id.)  The response from Nurse Bradley was that Plaintiff fell in June and was refusing medication, also stating that Plaintiff was on the doctor list and that his medical papers would be sent to the Arkansas Department of Corrections ("ADC"). Pltf's. Ex.  4.

According to Plaintiff, he only saw the doctor at the WCDC on July 22, 2008, despite his numerous complaints of pain.  Plaintiff quit taking medication in November, signing for it only a few times in the evening from November 18, until December 2, 2008, as the medication was no longer working.  Plaintiff also stated he quit taking the medication at times before November, because it gave him a headache.

On January 9, 2009, Plaintiff was transferred to the ADC.  His back was examined at the ADC and he was diagnosed with a back strain.  The ADC doctors checked his spine, but performed no x-rays and gave him no medication in pill form.  Plaintiff testified he was given an ointment, similar to the over-the-counter pain-relieving ointment "Icy Hot," which he was allowed to keep in his cell and use as needed.  Plaintiff states his pain resolved mid-January of 2009, although he still suffers a stiff back and some mornings it is difficult to get out of bed.

**Defendants' Version of Events**

Corporal Schultz testified that he had no recollection of

Plaintiff or of pulling Plaintiff into the hallway to discuss a slip and fall in 2008. Schultz was working on June 25 and June 26, 2008, and if an inmate told Schultz that the inmate was injured, Schultz would have had the inmate fill out a request, and then would have given the inmate any medication that was allowed by the nurse.

Schultz had no knowledge of a video of the fall existing, although there is a camera which could show if someone in the shower suffered a fall. While Nurse Johnson stated in response to Plaintiff's medical request that the video should be reviewed, she did not perform any follow-up to make certain the review was completed. Major Denzer testified there was a review to see if a copy of any video was made pursuant to a filed incident report, but nothing had been copied, indicating there was no video of the incident.

Nurse Johnson testified that she first found out about Plaintiff's fall in the shower on or about June 26, 2008, when she received a call from Plaintiff's girlfriend on that date. Johnson also stated she received Plaintiff's first written medical request on that date. Johnson went to B-Pod, where Plaintiff was housed, on June 26, 2008, to speak with him about his back, but he would not speak with her and instead demanded to go to the hospital.

Johnson did not tell Plaintiff he should refrain from having his family call the WCDC, but she did tell him that she would need authorization in writing to speak with his family. Plaintiff told

-7-

her he would not take the medication she prescribed for him.
Johnson testified she did not examine the Plaintiff at that time,
because he walked away from her, refusing any treatment beyond
going to the hospital.  According to Nurse Johnson, Plaintiff was
able to walk without limitations; he was not in any obvious pain,
and he was stomping, ambulating, turning, and moving with no
apparent limitations.  The Detention Center Logs, Defs'. Ex. 17,
confirm that medical call was held on June 26, 2008, in Plaintiff's
pod.

     After Johnson was notified of the fall, she checked to see if
there was any report made of a fall, and no such report was
located.  Although Johnson never physically examined Plaintiff, she
did observe how he walked to the door of the cellblock and came
into the open area.  Plaintiff never displayed any signs of
limitation or pain to Johnson or any guard or deputy.

     Further, Johnson testified that a review of the Medication
Administration Chart shows that Plaintiff did not take 99% of his
medication, and the amount of medication he took was not enough for
it to take effect or work.

     Johnson also testified that Dr. Howard saw Plaintiff on July
22, 2008, and she saw Plaintiff on July 24, 2008.  Again, the
Detention Center Records confirm medical call was held on those
dates, however those records indicate the July 24, 2008, medical
call was held by Nurse Rhonda, not Nurse Johnson. Defs'. Ex. 17.
Moreover, the medical record, Defs'. Ex. 7, shows Dr. Howard

-8-

examined Plaintiff three times during his incarceration: July 22, 2008, November 18, 2008, and December 9, 2008.

Dr. Howard confirmed by reading his notes that he had examined Plaintiff on July 22, November 18, and December 9, 2008. The Detention Center Logs, Defs'. Ex. 17, do not show any medical call for November 18 and December 9, 2008. Dr. Howard had no recollection of Plaintiff beyond his notes, but stated that due to the way in which he made his notes, he must have examined Plaintiff. During the July 22, 2008 examination, he examined the way Plaintiff sat down and moved in his chair. Based upon Dr. Howard's thirty-five years of experience, the doctor could not identify that Plaintiff was hurting as stated in his subjective complaints of pain. Regarding the December 9, 2008 medical call, this was in response to a medical request regarding throat pain, not back pain.

Although Nurse Johnson saw Plaintiff on July 24, 2008, she did not see the medical request dated for that same date, and she did not respond to it. The other records, marked August 5, September 6, 10, and October 6, 2008, she likewise did not see and they are not in the medical file. Pltf's. Ex. 4. Regarding the requests sent on October 29, 2008, and November 9, 2008, Nurse Johnson had left the employment of the WCDC at that time, and Nurse Bradley responded to those requests.

On the subsequent examinations November 18, 2008, and December 9, 2008, Dr. Howard testified Plaintiff's medications would have

-9-

been increased if he continued to complain of pain, or options of other medications would have been discussed. Additionally, on December 9, 2008, Plaintiff's chief complaint was a sore throat, and so antibiotics were prescribed for tonsilitis.

Dr. Howard agreed with Nurse Johnson's testimony that not enough medication had been taken to resolve the inflamation Plaintiff suffered in his back. Also, neither Nurse Johnson nor Dr. Howard were aware of headaches as a side-effect of Ibuprofen, and the Plaintiff did not indicate side-effects were occurring on his medical requests, only that the pain medication "was not working."

Nurse Bradley testified that she did not remember Plaintiff. However, she did testify as to the medical charge sheet, Defs'. Ex. 16, stating that inmates were to be charged for visits each time they saw the nurse or doctor, but it is not always done. Additionally, the medical staff filled out the charge sheets, but the actual charges were done by commissary and might not be placed on the inmate's account the day they were incurred. Thus, the dates listed on the charge sheets do not reflect the date the charge was incurred. Major Denzer testified that a $5.00 charge is made for prescriptions or doctor visits, and a $3.00 charge is made for a nurse visit or over the counter medication, but agreed the dates the charges are incurred is somewhat unreliable to establish when medical services were performed and may not accurately reflect the date of the medical service.

-10-

## II.  <u>Discussion</u>

Plaintiff has alleged he was denied medical care in the WCDC because his back was not properly examined and the medication he was prescribed was not adequate to manage his pain.  Plaintiff has stated he is suing Defendants in their individual capacities only (doc. 21, ¶ 1), and presented no evidence related to any official capacity claims at trial.  Thus, the Court will only consider individual capacity liability regarding the Defendants in this matter.

Plaintiff was both a pretrial detainee and a convicted prisoner[5] during the time of his claims, however, the Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. <u>See</u> <u>Butler v. Fletcher</u>, 465 F .3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" <u>Jolly v. Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting <u>Dulany v. Carnahan</u>, 132

---

[5]  Plaintiff was found guilty after a trial by jury on September 2, 2008. (Doc. 17).

-11-

F.3d 1234, 1239 (8th Cir. 1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." Popoalii v. Correctional Medical Services, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In Dulany, 132 F.3d at 1239, the United States Court of Appeals for the Eighth Circuit said:

> [a]s long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs.

See Estelle, 429 U.S. at 103. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. Id. at 106; Dulany, 132 F.3d at 1239. See also Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001).

-12-

Plaintiff has alleged that he fell in the shower of the WCDC, injuring his back.  His claim of a fall, while never substantiated by video tape or other evidence, was also never refuted at trial. Thus, the Court credits Plaintiff's testimony regarding his fall and his pain as a result of the fall.  The Court also finds this to be an objectively serious medical condition.  The Court must then turn to the main issue in this matter, whether either Defendant knew of Plaintiff's injury and then deliberately disregarded that injury.

Nurse Susan Johnson was the first to know of Plaintiff's injury.  She was alerted by both a phone call and a grievance to Plaintiff's condition.  The Court credits her testimony that she spoke with Plaintiff the same day she was notified of his injury, and that she assessed his condition by watching him ambulate with no limitations.

Nurse Johnson immediately prescribed Ibuprofen for Plaintiff. When she received a grievance stating Plaintiff was not receiving relief from the medication, Nurse Johnson then changed his prescription to Aleve.  When she received a third request, stating the medication was not working, the Court finds her response, that he should give more time for the medication to work, was based upon her medical judgment, and was not deliberately indifferent.  Long, 86 F.3d at 765, (holding that nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment in diagnoses and treatment.)   The medical administration record,

-13-

consistent with Nurse Johnson's testimony, does reflect that Plaintiff failed to consistently take the medication long enough for it to be effective.

The Court also credits Johnson's testimony that she did not see any grievances from Plaintiff from July 24, August 5, September 6, 10, or October 6, 2008.  Thus, the Court does not find that Nurse Johnson was deliberately indifferent to Plaintiff's medical needs for failing to respond on those occasions.  Moreover, while it appears that those requests were not forwarded to the medical staff, there was no evidence that either Defendant was responsible or knew those documents were not forwarded.

Next, the Court turns to Plaintiff's claims regarding Doctor Howard.  Doctor Howard saw Plaintiff when Plaintiff was scheduled for doctor call on July 22, 2008.  This doctor call is consistent with the response to Plaintiff's July 11, 2008, medical request, which changed his prescription from Ibuprofen to Aleve, and indicated Plaintiff would "see MD" if not improved in a week. Defs'. Ex. 3.

However, this examination was almost a month after Plaintiff suffered his injury, and the Court credits Plaintiff's testimony that no physical examination was performed.  The Court also credits Plaintiff's testimony that he did not see the doctor on November 18, 2008, or December 9, 2008, despite the testimony and doctor's

notes reflecting such an examination did occur.[6]  The December 9, 2008, medical request appears to be predicated upon Plaintiff's complaint of a sore throat, for which he has not claimed he was denied medical care, and is somewhat irrelevant to this matter.

The Plaintiff made five requests for medical care which were undisputedly seen by the medical staff.  In response to these medical requests, Plaintiff was seen twice by the nurse and once by the doctor.  He was provided medication, and was requested to take the medication to see if it could resolve his pain.

It is clear from the record before the Court that both Dr. Howard and Nurse Johnson performed minimal observations of Plaintiff.  Plaintiff's complaints of pain were also dismissively set aside because there was no corroborating evidence of a fall. The Court has grave reservations as to whether observation of Plaintiff, such as described being performed by both Nurse Johnson and Dr. Howard, constitutes a sufficient examination to diagnose a medical concern.  When Plaintiff requested medical treatment and was seen by one of the Defendants, he was given the same treatment as the times he was not even given the cursory evaluation by Nurse Johnson or Dr. Howard.  In other words, the response to his complaints was always the same - to take more medication or a

---

[6]  The Court observes Dr. Howard's notes attached as an exhibit to the Defendants' Motion for Summary Judgment (Doc. 17, Ex. 2 at 5), also do not reflect the November 18, 2008 and December 9, 2008 examinations.  At trial, Defendants' counsel suggested this was because the materials were provided to counsel from the WCDC before these examinations occurred.  However, the Motion for Summary Judgment was filed on August 17, 2009 (Doc. 15), over eight months after these purported examinations.

different medication.

However, the Court must also consider the well-established fact that Plaintiff refused his medications as prescribed.  Other Courts have found that "any medical observer" would be led to the "logical conclusion that the plaintiff was not experiencing significant pain" due to his refusal to take medications.  <u>Armes v. Noble County Sheriff Dept.</u>, 215 F. Supp.2d 1008, 1018-19 (N.D. Ind. 2002) (granting summary judgment where Plaintiff refused to take medication sixty-nine times in two and a half months).  In this case, it is clear that after at least one day, Plaintiff refused to take his medication consistently to have any effect.  Despite the minimal examination given to him, it appears that Plaintiff's medical issues would have resolved if he had simply followed the treatment offered him by Defendants.

Once Plaintiff was transferred to the ADC, he was seen by the ADC medical staff, who gave him a pain relieving ointment – a very conservative treatment, which Plaintiff testified worked to alleviate his pain.  Clearly, the medication prescribed by Nurse Johnson and Dr. Howard may have resolved Plaintiff's complaints.  Thus, it can not be established that Defendants were deliberately indifferent for offering it to him as a solution to his back strain.  Rather, this case appears to present a disagreement of treatment decisions, where Plaintiff disagreed that the medication would manage his pain, without actually attempting to follow the treatment.  It is clearly established that a difference of opinion

-16-

as to treatment decisions can not state a claim of denial of medical care. <u>Warren v. Fanning</u>, 950 F.2d 1370, 1373 (8th Cir. 1991); <u>Smith v. Marcantonio</u>, 910 F.2d 500, 502 (8th Cir. 1990); <u>Courtney v. Adams</u>, 528 F.2d 1056 (8th Cir. 1976).

**III.**     **<u>Conclusion</u>**

For the reasons stated above, I find in favor of the Defendants on the entirety of Plaintiff's claims.

**IT IS SO ORDERED this 24th day of May 2011.**

/s/ Erin L. Setser
HON. ERIN L. SETSER
U.S. MAGISTRATE JUDGE

-17-